# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FERNANDO COCA,**

    **Plaintiff,**

    **vs.**　　　　　　　　　　　　　　　　　　　　**Civ. No. 18-942 JAP/KK**

**ANDREW SAUL, Commissioner**
**of the Social Security Administration,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17) filed January 7, 2019 in support of Plaintiff Fernando Coca's ("Mr. Coca") Complaint (Doc. 2) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claims for Title II disability benefits and Title XVI supplemental security income benefits. On March 7, 2019, Plaintiff filed his Motion to Reverse or Remand Administrative Agency Decision and Memorandum Brief in Support. (Docs. 20, 21.) The Commissioner filed a Brief in Response on May 3, 2019 (Doc. 23), and Plaintiff filed a Reply on June 30, 2019. (Doc. 28.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and being fully advised in the premises, the Court recommends that the Motion to Reverse or Remand be **GRANTED.**

## I. Background

---

[1]    An Order of Reference (Doc. 26) was entered on May 14, 2019, referring this case to the undersigned Magistrate Judge to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

Mr. Coca is a forty-two-year-old man who attended special education classes, completed the ninth grade,[2] and never earned his GED. (Administrative Record ("AR") 035, 263.) He worked full time as a route salesman delivering milk from 1998 until 2004 when he lost his driver's license.[3] (AR 035-36, 040-41, 045, 263.) Thereafter, Mr. Coca worked for his mother's distributing company, then was self-employed as a greeter at a barbershop until he became unable to work in January 2016. (AR 038-40, 250-51, 341.)

Mr. Coca attributes his inability to work primarily to symptoms related to post-traumatic stress disorder ("PTSD"), a condition he traces to witnessing his father's murder when he was fifteen. (AR 044-45). He also attributes his inability to work to depression, anxiety, bipolar disorder, anger issues, memory and cognitive problems, back pain and spasms, leg pain, chronic pain, and "[i]njuries [s]ustained from [p]rior [motor vehicle accidents]."[4] (AR 262.)

Following the motor vehicle accident in January 2016 in which he was rear-ended, Mr. Coca began seeing Dr. Rick Cardenas, M.D., at Epoch Integrated Health Services (Epoch). (AR 437.) During his course of treating Mr. Coca, Dr. Cardenas diagnosed Mr. Coca with "severe anxiety" and PTSD and referred him for psychiatric evaluation and treatment. (AR 439.) Mr. Coca began seeing Kevin Heiskala, LCSW[5], at Epoch for psychotherapy related to his PTSD. (AR 438.) In a July 2016 to-whom-it-may-concern letter, LCSW Heiskala indicated that Mr. Coca's

---

[2]     The record contains conflicting information regarding how much schooling Mr. Coca completed. Mr. Coca testified at his administrative hearing that he completed the ninth grade. (AR 035.) However, the Disability Report completed when he applied for benefits indicates that Mr. Coca completed the eleventh grade (AR 263), and a medical record from 2007 describes Mr. Coca as "a high school graduate." (AR 341.)

[3]     Mr. Coca admitted abusing alcohol starting at age fifteen as a way of coping with childhood traumas he had experienced. (AR 045, 515.) He received seven DUIs and eventually lost his driver's license, which also caused him to lose his job as a truck driver delivering milk. (AR 035-36, 040-41, 045, 269, 515.) At his administrative hearing, Mr. Coca testified that he had not used alcohol in over ten years. (AR 036-37.)

[4]     The record indicates that Mr. Coca has been in three motor vehicle accidents: (1) an accident in 1992 in which the car he was driving was "t-boned," resulting in a loss of consciousness and hospitalization in the intensive care unit (AR 045, 526); (2) a motorcycle accident at age twenty-four in which he sustained a dislocated right hip that required long-term rehabilitation but not surgery (AR 527), and an accident in January 2016 in which the car he was riding in was rear-ended. (AR 385-86.)

[5]     Licensed Clinical Social Worker.

2

symptoms included "intrusive thoughts about the past, anxiety, avoidance[,] and difficulty being in public places." (AR 438.) Mr. Coca additionally established as a patient of Sarah Skinner, CNS[6], PMHNP[7] ("CNS Skinner"), at The Community Lighthouse in February 2016. (AR 473-77.) CNS Skinner diagnosed Mr. Coca as having PTSD and bipolar II disorder and began treating him with clonazepam, Lamictal, Zoloft, and trazadone. (AR 471, 476-77.) She continued treating him and titrating his medications over the next several months to address his various symptoms, which included panic attacks, nightmares, insomnia, anger outbursts, mood swings, crying, avoidance, and isolation. (AR 457-508.) She initially opined that his prognosis was "poor" but later indicated improved prognoses of "fair" and even "good" on two occasions. (AR 460, 466, 471, 477, 493, 498, 503, 508.) However, in September 2016, her prognosis returned to "poor" despite Mr. Coca's compliance with his medications and overall responsiveness to treatment. (AR 488.) In her October 2016 treatment notes, the last available in the administrative record, CNS Skinner indicated that Mr. Coca's prognosis was "fair." (AR 483.) In a November to-whom-it-may-concern letter, Dr. Cardenas opined that Mr. Coca "is unable to work and maintain a normal work[] schedule" and that he "needs psychiatric care." (AR 440.)

## II. Procedural History and the ALJ's Decision

Mr. Coca filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB") on May 31, 2016 and October 26, 2016, respectively, alleging disability beginning January 1, 2016.[8] (AR 012.) In December 2016, Mr. Coca was referred to Thomas Dhanens, Ph.D., for a consultative psychological evaluation.[9] (AR 515-18.) Dr. Dhanens

---

[6]       Certified Nurse Specialist.
[7]       Psychiatric Mental Health Nurse Practitioner.
[8]       Mr. Coca originally alleged disability beginning January 1, 2005 but amended his onset date to January 1, 2016 at the administrative hearing. (AR 012, 038-39, 242.)
[9]       Mr. Coca was also referred for a physical consultative examination, which was performed by Dr. Molly McClain, M.D., M.P.H., M.S., in January 2017. (AR 526-32.) Because the Court concludes that it is not relevant to

3

administered intelligence, achievement, reading, and spelling tests, assessed Mr. Coca as having a full-scale IQ of 52, and diagnosed him as having a "[m]ild intellectual disability[.]" (AR 516-17.) He additionally documented that Mr. Coca had a 3.7 grade level equivalency in reading and 1.8 grade level in spelling and that his "[p]rocessing was slow."[10] (AR 516-517.) Regarding vocational implications, Dr. Dhanens stated, "[i]t is not clear if PTSD would affect him in any way . . . in terms of working at this point." (AR 516.) He went on to state, "The vocational issue would be his intellectual disability, plus any physical problems he may have." (Id.) Specifically, Dr. Dhanens explained, "The question is whether he could stay focused and work steadily at a competitive pace with a simple repetitive job after he was taught the basic job duties." (Id.) Dr. Dhanens offered no answer to that question, only the observation that while Mr. Coca reported being "fidgety" and having trouble staying focused, he did not observe any such symptoms during his one-on-one visit with Mr. Coca. (Id.)

Mr. Coca's applications for SSI and DIB were initially denied on January 18, 2017 and again upon reconsideration on May 9, 2017. (AR 089, 108-09, 135, 159.) Mr. Coca requested a hearing before an administrative law judge ("ALJ"), and ALJ Cole Gerstner held an administrative hearing on February 20, 2018. (AR 031, 176-77.) Mr. Coca and an impartial vocational expert ("VE"), Sandra Trost, testified. (AR 012, 031.)

In his decision, the ALJ found that Mr. Coca suffers from the following severe impairments: hernias, osteoarthritis, intellectual disability, anxiety disorder, and PTSD. (AR 015.) Because he found that none of those impairments, alone or in combination, were presumptively

---

the disposition of this appeal, the Court does not discuss the evidence of record related to Mr. Coca's physical impairments.

[10]     Dr. Dhanens described Mr. Coca's performance on the reading test as follows: "Reading scored at a 3.7 grade level[,] but this was a slow[,] laborious process as he sounded out the words." (AR 517.) On the spelling test, Mr. Coca correctly spelled "cook" and "must" but misspelled "make" (mak), "light" (lite), and "enter" (entr). (AR 519.)

disabling under any of the Listings (AR 015-18), *see* 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, he proceeded to assess Mr. Coca's residual functional capacity ("RFC"). (AR 018-24.) In relevant part, he found that Mr. Coca "is limited to simple, routine tasks and simple work-related decisions. He can interact with supervisors, coworkers, and members of the public frequently." (AR 018-19.)

In discussing the evidence supporting this RFC, the ALJ accorded "great weight" to the opinions of state agency psychological consultants Richard Sorenson, Ph.D., who opined that Mr. Coca "could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with others at work, and respond to routine work changes[,]" and Howard Atkins, Ph.D., who opined that Mr. Coca "was capable of unskilled work." (AR 022.) After recognizing Dr. Cardenas as Mr. Coca's "treating physician[,]" the ALJ accorded "little weight" to his opinions that Mr. Coca could not work or maintain a normal work schedule. (AR 023.) The reasons he gave for assigning this weight to Dr. Cardenas's opinions were:

> First, the opinion is merely a one[-]sentence conclusory statement that does not offer any medical evidence or objective testing as support for the conclusion. Second, the doctor does not assert any specific functional limitations, making it even less probative. Finally, Dr. Cardenas' assessment that [Mr. Coca] cannot work is an issue reserved to the Commissioner and is, thus, not given any special significance under CFR 404.1527(d)(3) and 416.927(d)(3).

(AR 023.) The ALJ also gave "little weight" to the opinions of Dr. Dhanens because despite Dr. Dhanens' expressed belief that Mr. Coca "might have trouble staying focused and working steadily at a competitive pace[,]" Dr. Dhanens "did not report on any specific functional limitations[.]" (AR 023.) The ALJ's decision refers to neither LCSW Heiskala nor CNS Skinner, though the ALJ included selected pieces of evidence from CNS Skinner's medical records in his summary of the evidence supporting the assessed RFC. (AR 020-21.)

Although the ALJ found that Mr. Coca could not perform past relevant work given the RFC he assessed (AR 024-25), he found that Mr. Coca would be able to perform other jobs that exist in significant numbers in the national economy. (AR 025-26.) He therefore found that Mr. Coca was "not disabled." (AR 026.) Mr. Coca sought review by the Appeals Council, which denied Mr. Coca's request. (AR 001-5, 238-39.) Mr. Coca then appealed to this Court. (Doc. 2.)

## III. Applicable Law

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole

must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

## B.     Disability Benefits and the Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[11] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv). If the claimant can show that his impairment meets

---

[11]     20 C.F.R. pt. 404, subpt. P. app. 1.

or equals a Listing at step three, the claimant is presumed disabled and the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If at step three the claimant's impairment is not equivalent to a listed impairment, the ALJ must next consider all of the relevant medical and other evidence and determine what is the "most [the claimant] can still do" in a work setting despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1)-(3), 416.945(a)(1)-(3). This is called the claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a)(1) & (a)(3), 416.945(a)(1) & (a)(3). The claimant's RFC is used at step four of the process to determine if he can perform the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e). If the claimant establishes that he is incapable of meeting those demands, the burden of proof then shifts to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Grogan*, 399 F.3d at 1261.

## C. Consideration and Evaluation of Evidence

The ALJ must consider "all relevant evidence in the case record" in making a disability determination. SSR 06-03P, 2006 WL 2329939, at *4 (Aug. 9, 2006).[12] Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence[.]" *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss not only the evidence supporting his decision but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. The ALJ's decision must demonstrate application of the correct legal standards applicable

---

[12]     The Court acknowledges that Social Security Rulings 96-2P, 26-5P, and 06-03P—all of which the Court relies on in its analysis—have been rescinded effective for claims filed on or after March 27, 2017. *See* SSR 96-2P, 2017 WL 3928298, at *1 (Mar. 27, 2017). However, Mr. Coca's claims were filed in 2016, making those rulings and case law interpreting them still applicable.

to different types of evidence, and failure to follow the "specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . constitutes reversible error." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).

### 1. Consideration of Medical Opinions

Under the Social Security regulations, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The SSA considers a multitude of factors in determining what weight to give a medical opinion. 20 C.F.R. §§ 404.1527(c) and 416.927(c) (setting forth the factors to be weighed, comprising (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors). The SSA considers "*all* of the . . . factors" in making its determination. *Id.* (emphasis added). While the SSA will give more weight to a medical opinion that is supported by medical signs and laboratory findings and for which the source provides an explanation, *see* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."), supportability is just one factor to be considered. 20 C.F.R. §§ 404.1527(c) and 416.927(c). A medical opinion may not be rejected outright on the basis that it is conclusory and the record does not contain medical evidence or objective testing to support it. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 06-03P, 2006 WL 2329939, at *2-3 (describing the myriad factors that are to be considered in determining what weight to assign a medical opinion, including "[h]ow consistent the medical opinion is with

the record as a whole"); *see also Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (unpublished) (explaining that "[a]lthough supportability might prove determinative, that can only be decided after consideration of the other factors" and finding that "the ALJ's apparent failure to consider any factor other than supportability makes the ALJ's reasoning insufficient").

Moreover, a medical opinion from a treating source is entitled to controlling weight if it is well-supported and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-5P, 1996 WL 374183, at *2 ("The regulations recognize that treating sources are important sources of medical evidence and expert testimony, and that their opinions about the nature and severity of an individual's impairment(s) are entitled to special significance; sometimes the medical opinions of treating sources are entitled to controlling weight."). Determining the weight to accord a treating source's medical opinion proceeds through a sequential process: the ALJ must first determine whether the opinion deserves controlling weight. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (describing the analysis as "sequential" and explaining that "[i]n deciding how much weight to give a treating source, an ALJ must first determine whether the opinion qualifies for 'controlling weight'"). A threshold finding on this question "is necessary so that [a reviewing court] can properly review the ALJ's determination on appeal." *Id.* If the opinion is entitled to controlling weight, "no other factors need be considered and the inquiry is at an end." *Andersen*, 319 F. App'x at 718. However, even if not entitled to controlling weight, a treating source's medical opinion "is still entitled to deference and must be weighed using all of the relevant factors." *Langley*, 373 F.3d at 1120 (alteration and internal quotation marks omitted); *Andersen*, 319 F. App'x at 718 (stating that if either condition entitling an opinion to controlling weight is not met, "an ALJ is not free to simply disregard the opinion or pick and choose which portions to adopt"). "[I]f the ALJ rejects [a treating source]

opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350

F.3d at 1301 (internal quotation marks omitted). The reasons must be "sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir.

2004) (internal quotation marks omitted). An ALJ's failure to set forth adequate reasons explaining

why a medical opinion was rejected or assigned a particular weight and demonstrate that it has

applied the correct legal standards in evaluating the evidence constitutes reversible error. *See*

*Reyes*, 845 F.2d at 244; *Andersen*, 319 F. App'x at 717 ("The agency's failure to apply correct

legal standards, or show us it has done so, is grounds for reversal." (alternation and internal

quotation marks omitted)).

### 2. Consideration of Medical-Source Opinions on Issues Reserved to the Commissioner

An opinion from a medical source on an issue reserved to the Commissioner—e.g., that

the claimant is "disabled" or "unable to work" or has an impairment that meets a Listing—is not a

"medical opinion" and thus may never be given controlling weight or special significance. *See* 20

C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5P, 1996 WL 374183, at *2 (Jul. 2, 1996). "However,

opinions from any medical source on issues reserved to the Commissioner must never be ignored."

SSR 96-5P, 1996 WL 374183, at *3. "The adjudicator is required to evaluate all evidence in the

case record that may have a bearing on the determination or decision of disability, including

opinions from medical sources about issues reserved to the Commissioner." *Id.* "If the case record

contains an opinion from a medical source on an issue reserved to the Commissioner, the

adjudicator must evaluate all the evidence in the case record to determine the extent to which the

opinion is supported by the record" and must "apply the applicable factors" for weighing medical

opinions set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). SSR 96-5P, 1996 WL 374183, at

*3; *see Lackey v. Barnhart*, 127 F. App'x 455, 457-58 (10th Cir. 2005) (unpublished) ("In particular, when assessing the probative value of an opinion [on an issue reserved to the Commissioner], it remains appropriate to consider the supportability of the opinion . . . and its consistency with the record as a whole." (alterations and internal quotation marks omitted)). The decision "must explain the consideration given to the treating source's opinion(s)." SSR 96-5P, 1996 WL 374183, at *6. Additionally, "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.* Failure to demonstrate compliance with the foregoing standards for evaluating an opinion on an issue reserved to the Commissioner is grounds for reversal and remand. *See Lackey*, 127 F. App'x at 458.

## IV. <u>Discussion</u>

On appeal, Mr. Coca's counsel argues that the ALJ's decision "is clearly erroneous, makes improper findings of facts and conclusions of law, and should be reversed and remanded because of erroneous findings of fact and improper application of the law and because the decision is generally not supported by substantial evidence in the record as a whole." (Doc. 20 at 1.) At the outset, the Court notes that Mr. Coca's counsel cites not a single legal authority and presents no meaningful legal argumentation in either of his briefs. Instead, he merely quotes the ALJ's decision at length (Doc. 21 at ¶¶ A.1-A.11), lists excerpted portions of Mr. Coca's hearing testimony (Doc. 21 at ¶¶ B.1-B.21), then quotes from a few of the medical records in evidence. (Doc. 21 at ¶¶ B.22-B.26.) Indeed, Mr. Coca's counsel fails to clearly articulate the various claims of error he purports to raise, instead generally complaining in conclusory fashion about various things the ALJ "failed"

to do without explaining how any of those alleged failures amount to legal error.[13] (Doc. 21 at 11-14.) Counsel is reminded that the Court is not required to consider arguments that are poorly developed and have not been adequately briefed for judicial review. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). However, after extensive consideration of the briefs and undertaking its meticulous review of the administrative record, the Court concludes that the ALJ failed to apply the correct legal standards in rejecting Dr. Cardenas's opinions, that Mr. Coca preserved this claim of error, and that remand is required.[14]

A.    **The ALJ erred by failing to consider Dr. Cardenas's *medical* opinion that Mr. Coca is unable to maintain a normal work schedule.**

As an initial matter, the Court notes that what the ALJ treated as a single opinion by Dr. Cardenas in fact comprises two distinct opinions: (1) that Mr. Coca is unable to work, and (2) that Mr. Coca is unable to maintain a normal work schedule. The former is indisputably not a "medical opinion" but rather an opinion on an issue reserved to the Commissioner.[15] *See* 20 C.F.R.

---

[13]    The Court notes that many, if not all, of the "issues" Mr. Coca's counsel raises either are overly broad generalizations that do not accurately reflect the record or regard issues that were never raised before the ALJ. For example, the first "issue" Mr. Coca raises is that the ALJ "failed to recite any evidence from the medical records of Community Light House and its clinical director Sarah Skinner[.]" (Doc. 21 at IV.A.) That statement is simply incorrect. The ALJ's decision, while never referring to CNS Skinner by name, includes a discussion of selected pieces of evidence from CNS Skinner's treatment records, a fact readily ascertainable by simply reviewing the record. (AR 020-21.)

    As an additional example, Mr. Coca complains that the ALJ "failed to point out that Mr. Coca sustained a closed head injury" and "failed to do a study or comment on the late effects of prolonged loss of consciousness in later development when combined with [PTSD]." (Doc. 21 at IV.B and IV.F.) Mr. Coca fails to point to—and the Court has been unable to locate—anything in the record indicating that Mr. Coca ever claimed to have suffered, let alone was diagnosed with, a traumatic brain injury such that the ALJ's duty to further investigate the effects of such an injury would have been triggered. *See Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.").

[14]    The Court finds that Mr. Coca's counsel sufficiently raised this issue by arguing that the ALJ should not have rejected Dr. Cardenas's opinions outright (Doc. 21 at IV.B) and that the Commissioner understood and had an adequate opportunity to respond to that argument. (Doc. 23 at 6-8.)

[15]    The Court addresses the ALJ's errors regarding the handling of this opinion in the next section.

§§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *2, 5 (listing examples of opinions that are not medical opinions and explaining that medical-source opinions that an individual "is 'disabled' or 'unable to work' . . . are administrative findings that may determine whether an individual is disabled" and are thus "reserved to the Commissioner"). The latter, however, is a "medical opinion" because it reflects Dr. Cardenas's opinion about what Mr. Coca "can still do" despite his impairments, i.e., it expresses a functional limitation. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); Social Security Program Operations Manual System ("POMS") § DI 25020.010, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (explaining that the mental abilities needed for any job include "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"). The distinction matters because "medical opinions" are entitled to special significance, sometimes even controlling weight, and in any event must be analyzed differently than opinions on issues reserved to the Commissioner. *See Lackey*, 127 F. App'x at 457-58 (describing the distinction between medical opinions and opinions on issues reserved to the Commissioner as "important" and explaining the differing analytical frameworks for evaluating each type of opinion).

The ALJ's decision evinces that he failed to recognize Dr. Cardenas's opinion that Mr. Coca's is unable to maintain a normal work schedule as a *medical* opinion in the first instance and thus failed to analyze it under the correct legal standard. Notably, the decision is silent as to the threshold question of whether Dr. Cardenas's medical opinion was entitled to controlling weight. *See Watkins*, 350 F.3d at 1300 (explaining that Social Security Ruling 96-2P "contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight" and that "[a] finding at this stage . . . is necessary so that we can properly review the ALJ's

determination on appeal"). Even assuming *arguendo* that Dr. Cardenas's medical opinion was not entitled to controlling weight, the ALJ was next required to (1) consider all the factors for weighing a medical opinion in deciding what weight to give the opinion, and (2) demonstrate his consideration by giving good reasons for the weight he ultimately assigned to the opinion. *See Watkins*, 350 F.3d at 1301 ("After considering the pertinent factors, the ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." (alteration and internal quotation marks omitted)). He failed to do so.

The ALJ's failures regarding his handling of Dr. Cardenas's medical opinion constitute reversible error because they leave the Court unable to meaningfully review his decision. *See Lackey*, 127 F. App'x at 458-59 (stating that "[w]hen, as here, an ALJ does not provide an explanation for rejecting medical source evidence, we cannot meaningfully review the ALJ's determination" and reversing and remanding for further proceedings (internal quotation marks omitted)). Moreover, the error is not harmless because had the ALJ properly considered that opinion, there is a possibility that the opinion would have established an "extreme limitation" in Mr. Coca's ability to maintain pace, which, coupled with his full-scale IQ score of 52, would have rendered him presumptively disabled under Listing 12.05. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.05; *see also Winick v. Colvin*, 674 F. App'x 816, 820-21 (10th Cir. 2017) (unpublished) (concluding that an ALJ's failure to analyze a treating source's opinion under the standards for evaluating treating-source opinions was not harmless, remanding "for a proper analysis" of the claimant's treating physician's opinion, and explaining that a proper evaluation of a treating source's opinion "may affect the ALJ's overall weighing of the medical evidence"). But even if the opinion was found not to support finding Mr. Coca presumptively disabled, there is at least a possibility it would have resulted in the assessment of a more restrictive RFC at step four, which

in turn may have affected the ALJ's disability determination at step five. As such, the error is not harmless, and remand is proper.

**B.      The ALJ also failed to apply the correct legal standards for considering Dr. Cardenas's opinion that Mr. Coca is unable to work.**

An independent basis for reversal and remand is that the reasons the ALJ provided for rejecting Dr. Cardenas's opinion that Mr. Coca is unable to work are inadequate as a matter of law and/or not supported by substantial evidence. As noted previously, the reasons the ALJ gave for rejecting Dr. Cardenas's opinions were:

> First, the opinion is merely a one[-]sentence conclusory statement that does not offer any medical evidence or objective testing as support for the conclusion. Second, the doctor does not assert any specific functional limitations, making it even less probative. Finally, Dr. Cardenas' assessment that [Mr. Coca] cannot work is an issue reserved to the Commissioner and is, thus, not given any special significance under CFR 404.1527(d)(3) and 416.927(d)(3).

(AR 023.) The ALJ provided no further explanation of his consideration of Dr. Cardenas's opinions. For the following reasons, the Court concludes that the ALJ's decision fails to reflect application of the correct legal standards for evaluating Dr. Cardenas's opinion that Mr. Coca is unable to work.

**1.      Opinions on issues reserved to the Commissioner must still be considered in accordance with applicable legal standards.**

While the ALJ correctly noted that an opinion on an issue reserved to the Commissioner is not entitled to any special significance, he erred by then rejecting that opinion outright without first (1) demonstrating that he evaluated all the evidence in the case record to determine the extent to which that opinion was supported by the record as a whole, *and* (2) applying the applicable factors for weighing the opinions of medical sources on issues reserved to the Commissioner,

principally the consistency of Dr. Cardenas's opinions with the record as a whole.[16] *See* SSR 96-5P, 1996 WL 374183, at *3. Indeed, while the record contains no treatment records from Dr. Cardenas, evidence consistent with and supporting Dr. Cardenas's opinion—and not accounted for by the ALJ—exists in records supplied by Mr. Coca's other treating providers. Specifically, LCSW Heiskala's letter indicated that he was treating Mr. Coca for PTSD and conveyed that Mr. Coca displayed symptoms including "intrusive thoughts about the past, anxiety, avoidance[,] and difficulty being in public places."[17] (AR 438.) This evidence—which the ALJ ignored completely—tends to provide support for Dr. Cardenas's opinion because it speaks to the severity of Mr. Coca's symptoms as observed by one of his treating mental health providers. Additionally, evidence from CNS Skinner's treatment records supplies further corroborating support for Dr. Cardenas's opinion. Specifically, CNS Skinner's records indicate that she was treating Mr. Coca's mental impairments with a medication regimen consisting of four different medications aimed at managing his symptoms, which included panic attacks, nightmares, insomnia, anger outbursts, mood swings, crying, avoidance, and isolation. (AR 468, 471, 473, 495.) Furthermore, they document CNS Skinner's evolving prognoses and assessments of the severity of Mr. Coca's various conditions, which generally indicated instability and fluctuation in Mr. Coca's overall condition. The ALJ also failed to mention, much less meaningfully discuss, any of these aspects

---

[16] The Commissioner in his Brief in Response employs the same flawed reasoning relied upon by the ALJ, i.e., that because an opinion on an issue reserved to the Commissioner is not entitled to special significance or weight, it may be rejected outright. (Doc. 23 at 7.) The Commissioner additionally contends that "no treatment record would have realistically changed the ALJ's findings that Dr. Cardenas's opinion was bare and conclusory, that he failed to offer any objective evidence in support of his opinion, and that ultimately, he was opining on an issue reserved to the Commissioner." (Doc. 23 at 8.) As the Court's discussion demonstrates, the Commissioner is wrong on both counts.

[17] Having never mentioned this evidence, the ALJ also failed to assign a weight to LCSW Heiskala's opinion regarding Mr. Coca's symptoms contained therein, which itself constituted error, though not one about which Mr. Coca complains. *See See* 20 C.F.R. §§ 404.1527(f), 416.927(f) ("The adjudicator generally should explain the weight given to opinions from [medical sources who are not acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); SSR 06-03P, 2006 WL 2329939, at *3-4. The Court nevertheless points this out so that the ALJ properly accounts for all opinions of record on remand.

of CNS Skinner's records. His disjointed partial summary of CNS Skinner's records comprised cherrypicked pieces of evidence, the relevance of which is never made clear in the ALJ's discussion.[18] The ALJ's failure to even mention the foregoing, significantly probative pieces of evidence—from both LCSW Heiskala and CNS Skinner—evinces that he failed to evaluate all the evidence in the record to determine to what extent Dr. Cardenas's opinion was supported and failed to apply the applicable factors for considering Dr. Cardenas's opinion, i.e., he failed to consider Dr. Cardenas's opinion under the correct legal standard.

2. **The "conclusory" nature of Dr. Cardenas's opinion and the absence of medical evidence or objective testing to support the conclusion is not, by itself, a valid reason for rejecting the opinion.**

As an initial matter, to the extent the ALJ could not ascertain the basis of Dr. Cardenas's opinion from the case record, he was required to make every reasonable effort to recontact Dr. Cardenas to seek clarification of the bases for his opinion. *See* SSR 96-5P, 1996 WL 374183, at *6. The Court finds that the ALJ failed to comply with his duty.[19] *See Robinson*, 366 F.3d at 1084 ("The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden."). Moreover, and as discussed above, an ALJ's consideration of a treating

---

[18]    As with LCSW Heiskala's opinion, the ALJ failed to assign a weight to CNS Skinner's opinions regarding Mr. Coca's symptoms and prognosis.

[19]    The record indicates the existence of unusual circumstances in this case that affected the SSA's ability to obtain additional records from Epoch and, thus, Dr. Cardenas and LCSW Heiskala, who were both providers at Epoch. The ALJ himself acknowledged that it was not possible to obtain Dr. Cardenas's records because Epoch had "shut [its] door[s.]" (AR 046.) Indeed, the SSA's documentation of its "claim communications" indicates that it called Epoch twice in April 2017 to check the status of its request for medical records. (AR 120-21.) On both occasions, no one answered, and there is no documentation that a message was left or return call received. (Id.) On February 16, 2018, four days before the administrative hearing was held, the SSA issued a subpoena to "EPOCH Behavioral Healthcare" ordering "You" to appear at and bring medical records to the hearing or mail the records in advance of the hearing. (AR 232-36.) The subpoena provided that "[i]n lieu of appearance, the records can be sent by registrar mail no later than February 9th, 2018[,]" i.e., one week before the subpoena was even issued. (AR 233.) No additional records from Epoch were ever made part of the administrative record, and no one from Epoch—e.g., Dr. Cardenas or LCSW Heiskala—appeared to testify.

On these facts, the Court finds it particularly problematic that the ALJ effectively penalized Mr. Coca for Epoch's failure, and Dr. Cardenas's inability, to provide the SSA with Dr. Cardenas's medical records, which may well have provided support for his opinions that would have entitled those opinions to greater weight.

source's opinion on an issue reserved to the Commissioner is necessarily a multifaceted undertaking, one that requires a holistic consideration and weighing of the evidence and does not allow the outright rejection, as occurred here, of the opinion based on the lack of medical evidence or objective testing from the source of the opinion.

The Commissioner identifies no authority supporting such a proposition. The Commissioner cites only 20 C.F.R. § 404.1527(c)(3) and *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) in support of his argument that the ALJ "reasonably assigned [Dr. Cardenas's opinion] little weight" (Doc. 23 at 6-7), neither of which compels the conclusion that the ALJ properly rejected Dr. Cardenas's opinion because Dr. Cardenas did not offer any medical evidence or objective testing to support his opinion. 20 C.F.R. §§ 404.1527(c)(3) provides that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." While a reasonable inference is that in the absence of relevant evidence supporting an opinion, a source's conclusory opinion may be accorded *less* weight, that absence is not a basis for refusing to consider the opinion at all, which is effectively what the ALJ did here. Regarding *Raymond*, the Commissioner relies on that case to support the proposition that an ALJ may properly decline to give controlling weight to a treating physician's opinion that is brief, conclusory, and unsupported by objective medical findings. (Doc. 23 at 7.) The issue here, however, is not whether the ALJ failed to give controlling weight to Dr. Cardenas's opinion but rather the ALJ's failure to apply the correct legal standards for considering and evaluating Dr. Cardenas's opinion on an issue reserved to the Commissioner. Indeed, the issue of controlling weight has no place in the analysis of such an opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5P, 1996 WL 374183, at *2. *Raymond* is inapposite.

The Court concludes that the ALJ's rejection of Dr. Cardenas's opinion based on the fact that Dr. Cardenas did not offer any medical evidence or objective testing to support his opinion was improper.

3. **The absence of any assessed functional limitation is also not a basis for rejecting a treating source's opinion on an issue reserved to the Commissioner.**

The only other reason the ALJ provided for rejecting Dr. Cardenas's opinion was that Dr. Cardenas "does not assert any specific functional limitations, making it even less probative." (AR 023.) The Court again begins with the observation that the ALJ was required to "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record" and "apply the applicable factors" for weighing opinion evidence. *See* SSR 96-5P, 1996 WL 374183, at *3. Thus, it would have been proper for the ALJ to discuss the absence in the record of any opinions indicating that Mr. Coca was functionally limited in evaluating whether Dr. Cardenas's opinion that Mr. Coca is unable to work is supported by and consistent with the record as a whole. However, that is not what the ALJ did here. Rather, as discussed above, he summarily rejected Dr. Cardenas's opinion that Mr. Coca is unable to work, never explaining how he evaluated that opinion vis-à-vis other relevant evidence in the record to determine whether it was supported by the record as he was required to do. *See* SSR 96-5P, 1996 WL 374183, at *3, 6.

Moreover, this proffered reason fails for another reason: the ALJ's finding that Dr. Cardenas did not "assert any functional limitations" is not supported by substantial evidence. As concluded above, Dr. Cardenas's opinion that Mr. Coca is unable to maintain a normal work schedule indeed asserts a functional limitation. Moreover, and applying the proper whole-record standard for evaluating the subject opinion, the Court notes that Dr. Sorenson, the state agency psychological consultant whose opinions the ALJ gave "great weight" (AR 022-23), completed a mental RFC assessment in which he assessed Mr. Coca as having functional limitations in each of

the areas of functioning assessed. (AR 085-87.) Notably, Dr. Sorenson assessed Mr. Coca as being "moderately limited" in the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[20] (AR 086.) Additionally, Dr. Dhanens identified as a potential vocational issue whether Mr. Coca "could stay focused and work steadily at a competitive pace with a simple repetitive job after he was taught the basic job duties." (AR 516.) While Dr. Dhanens did not affirmatively opine that Mr. Coca *was* functionally limited in that way, he also did not opine that Mr. Coca had no, or only a mild, limitation in the ability to complete a normal workday and workweek and maintain pace. Thus, the ALJ's reason for rejecting Dr. Cardenas's opinion based on his finding that it was not corroborated by any functional limitations is not only legally unsound but also unsupported by substantial evidence.

In sum, none of the reasons given by the ALJ provided a valid basis for the ALJ to reject Dr. Cardenas's opinion that Mr. Coca is unable to work. The ALJ's decision evinces that he failed to apply the correct legal standards in considering Dr. Cardenas's opinion that Mr. Coca is unable to work. Remand is therefore required. *See Reyes*, 845 F.2d at 244.

## C.    The Court does not reach Mr. Coca's other arguments.

---

[20]    To the extent the ALJ found there to be a conflict between Dr. Sorenson's and Dr. Cardenas's opinions regarding the degree of functional limitation assessed (i.e., because Dr. Cardenas's opinion may indicate his assessment that Mr. Coca has a "marked" or even "extreme" functional limitation as opposed to Dr. Sorenson's opinion that Mr. Coca's limitation was only "moderate"), the ALJ was first required to make every reasonable effort to recontact Dr. Cardenas for clarification of his opinions and the bases therefore, which the Court has already concluded he failed to do. *See* SSR 96-5P, 1996 WL 374183, at *6. And assuming a conflict indeed existed, the ALJ was next required to explain why he rejected a treating source's opinion in favor of a medical opinion by a non-examining reviewer, which he also failed to do. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations[.]"); SSR 96-2P, 1996 WL 374188, at *5 (stating that the Social Security Regulations "require[] that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)").

Because the Court concludes that remand is required as set forth above, the Court will not address Mr. Coca's remaining claims of error. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

## V. Conclusion

For the reasons stated above, the Court recommends that Mr. Coca's Motion to Reverse or Remand (Doc. 20) be **GRANTED.**

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(c). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(c), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

**KIRTAN KHALSA**
**United States Magistrate Judge**